The next case is number 221065, Omri Mota v. Okonite Company, Inc. At this time, Attorney Dio, you can come up to the podium and introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court, I am Attorney Sonia Dio and I represent the appellate Omri Mota in this matter. I would request that two minutes be reserved in rebuttal. Yes. Essentially, Your Honor, we're here for two different reasons today, but the main reason I want to address is this issue pertaining to how at the end of his employment, the employer took what was a loan obligation and then imputed it to my client as income, and now it's seeking to recover on that imputed income. In any other situation, if I take out a student loan, if you take out a student loan, that is a loan. It is an income to you, and the only time that becomes income to you is if it is discharged by that loan holder. In this instance, the W-2 that was provided to my client at the end of his employment imputed $22,500 worth of income to him based on amounts that the employer had paid to Bryant University where he had been a student during the period of his employment. And did you have to pay taxes on that? Yes, he did. He had to pay taxes on the $22,500. And that raises a good point, because in any other circumstance, if I take a loan, the it's paid back with post-tax dollars. In this instance, he in fact, in any ordinary circumstance would be doing that, but now he gets double taxed. He got taxed when it's declared as imputed income to him, and now he's going to be taxed again if he's required to pay that money back with again post-tax income. I'm not following that. Is there anything in the record that shows he paid tax based on the loan? I don't see where it's disputed anywhere. It is in the record. It's how it was briefed. I'm sorry? My question is, is there anything in the record to show what he paid in taxes? The exact amount he paid, no, Your Honor. Is there anything to show that he did pay tax treating that loan as income? It is, what is in the record is the W-2 with that income imputed to him. No, I understand that he got a W-2. Correct. Is there anything in the record to show that he in fact paid tax based on it? Your Honor, I don't believe that was a disputed fact. I'm sorry, you're saying it's not a disputed fact? I'm sorry, Your Honor? You're saying it's not a disputed fact that he paid tax? It's not a disputed fact. I have the W-2 in front of me, and that's how it was argued below. I'm unaware of that being disputed at any point. No one's disputing that the client got a W-2, okay? Yes. But then the question is, what did he do with the W-2? Did he acquiesce to the treatment as income and therefore pay increased income tax on it, or did he not? And my question is, does the record answer that question? The record makes the allegation that he made that payment, that he reported those amounts to the IRS and then made his tax obligations. Okay, so your answer is yes? Yes. Where in the record? Your Honor, it's in the indisputed fact statement. I don't have that number in front of me. And then how is he going to pay another tax when he has to pay the loan back? Doesn't he then get a deduction? No, he doesn't, Your Honor, because in this instance, it's a straight loan. It's not a situation where... So in any ordinary instance, when you're dealing with a loan, right? You go to Hyundai Motor Finance, you buy yourself a car, you use that car, you're paying back the principal on that, and then you're paying back interest on that. And unless you have some sort of business reason to make some sort of deduction on that, you're paying back that loan with after-tax income. But that's all in the context of it not having been income in the beginning. If, as you say, this was treated as a payment to him as income, then when he has to make a payment to the employer, wouldn't that be deductible? It's not deductible. Or do we not know? I do know. I know very well from speaking with my client and his tax accountant. It is not deductible. He has to pay this with post-tax income. With his tax... I'm asking about the record here. What I'm saying to you, Your Honor, is that the record says that he paid the taxes on this. He paid the taxes on this in 2018. It was 2017 income that was imputed to him. In this instance, as I said, the employer is now seeking to have that money paid back. So not only is it income to him in 2017, they want it paid back to him, paid back to the employer later on. So maybe this is a question that happily has to answer, but I am quite confused here because, I mean, it seemed to me at the outset it was understood that this was a loan, right? This is a benefit that the company gives to its employee. And so since that was the understanding at the outset, I don't understand why on an ongoing basis it would be treated as income. Seems to me it would only become income if he complied. If he stayed with the company for three years after receiving the loan, that was the deal. And then it was discharged. At that point, when it was discharged, then I think it would have to be treated as income. But why would it be treated as income from the very outset when the understanding at the outset was it was only a loan? I don't understand that. But that's the problem I have. They reported it to him as computed income. I'm looking at box 14 on his W-2. Was there any discussion with you before they reported it as income? No. For him, your client? No. And there's been no discussion throughout this litigation with respect to that issue. And no amended W-2 has ever been filed. Well, did the court deal with it at all below? I mean, you raised it as the first issue you want to discuss before us. So, I mean, it is confusing from my perspective. Your Honor, there's not even a throwaway line on it. Frankly, had there been a throwaway line on it where it said, you know, we've considered the affirmative defense and, you know, we find it has no merit, then my client would be at a place where he'd go to the IRS and say, look, we have this decision that says this. He doesn't have that at this point. And that's part of the problem. So not only is it being imputed to him as income, but it's also then being taken as a loan. We have this unusual thing. Certainly, if he went to the bank and got a student loan, I don't believe it would be income. But here we have an employer-employee relationship, which is subject to different regs on what has to be reported to the IRS and what doesn't. And I guess I struggle to find in the briefs a clear explanation. There's a Fourth Circuit case, I think, and then one other district court case of exactly what an employer's obligations are under the Internal Revenue Code. I can answer that today, Your Honor. I'm about to run out of time. Can I continue? It's probably going to take me a couple seconds. Yeah, go ahead. As for today, if I am working for an employer and the employer makes payment on my behalf to a university for the amount up to $5,250, that amount is something that isn't imputed as income to the employee. Anything over that amount, say they paid, you know, $10,000 in a particular year, $52,500 would not be, and the remaining amount would be. That's as the law is today. I'm sorry, would be income? Anything over the $52,500 would be income to the employee. It would still be deducted by the employer, but it wouldn't be at a place where the employee had to pay that back. If I may? Any other questions? And is that cited in your brief? That's the present tax reg? No, it's not. So could we have a 28-J letter? Yeah, could you submit a 28-J letter on that reg? And also, could you please indicate if that reg, that current reg would be applicable to your client? Yes, Your Honor. Thank you. At this time, Attorney Mack, please introduce yourself on the record to begin. Good morning, Your Honor. Eric Mack on behalf of the Oakland High Company. I don't know if you have any specific questions. If not, I'll just go to my hard drive. What about the income? Excuse me? Oh, you want to start, Jeff? Yeah, just very quickly. It does seem clear that Appellant is right. The district court, despite this issue having been raised, that's what representatives did not say a word about what's characterized as an affirmative defense. I mean, his argument is that he should not be required to repay this loan in the way that the district court ordered. And there's, the district court didn't say a word about this. So how, and you seem to say that doesn't matter. It was critical to the defense. The district court said nothing about it. So how can we overlook that fact? I say the district court is, they are assumed to have read the record and understand everything. This is an affirmative defense that has been raised by Mr. Mott and his counsel. But I don't think the district court is required to address that. Well, so this is, we're having trouble understanding this issue. It seems like a fairly complicated question. And we're supposed to assume the district court thought it all through and didn't think it was worth any comment? I say, I assume that that's what the legal precedent that I cited says, that they assume that they read the record and understand it and considered all of the arguments before the district court. It's an affirmative defense. A lot of affirmative defenses are raised all the time in cases. Numerous affirmative defense are. But when you reported it as income, you were allowed to take a business, take a deduction as a business expense to the company. I assume that is correct, that they did take a business expense at some level in the company. And to the extent that they- So there's been some level of payment on whatever amount it is. I mean, it has to be by virtue of the fact that there was a financial benefit to you for reporting it as income. To the extent that the question at issue here is whether we received a benefit because he didn't pay the loan and we reported it as income, you know, we are of the mind that we would have, we're willing to amend whatever, whether it's the W-2 for him or the deduction that we receive. The issue here is that, you know, we had the agreement with him. He violated the agreement and we think we're entitled to money. So you're willing to concede, what, that there's an offset? We're willing to concede that there would be an offset to the extent he paid it back. I think that, therefore, he would have, he, Mr. Motta, would be entitled to some level of amended W-2 or some type of tax return change for that. We received the benefit for it too and I think their accountants would have to go back and look at that as well. So we're willing to concede that point to the court. However, the point that we want to focus on is that, you know, we had an agreement with him. He was supposed to work with us for three years after he took off the loan and he just never did that to him. And we don't think we've done anything inconsistent with our rights to waive or discharge our rights here. So I don't, so you, you treated, apparently treated it as income. You say you were required to do that. Judge Thompson points out you've got the benefit of some deductions. You've got that benefit. And now you get the benefit of court orders saying that he's got a, it really was a loan all the time and he's got to fully repay the loan. What, how does that work? That you, you get it both, you get a benefit both ways. It was a loan, if it was a forgivable loan, if he satisfied the, the arrangement, the contractual arrangement, which he did not, did not satisfy. We agree that we get a, an award by this court of $33,000 approximately. And then at that point in time, I think that there's amendments to the tax returns that would need to be done to true up or the offsets that were required as, as suggested by Judge Thompson. So, so I hear the, the, the legal framework that you seem to be suggesting is that the employer gives the employee a $10,000 loan for educational purposes. Yeah. That's to be paid back on, only conditionally paid back if he leaves. That the employer gives, treats that as income at the time, even though it's a loan, gives a W-2 saying it's income. If it's never paid back, then that's it. Things are left that way. But if it is paid back, then you get an amended W-2 that the employer would, employee would then use to file an amended tax return and the employer would then have to realize it's income, anything paid back. Is that the framework? That's the, I, I think you answered the question you asked, but yes, that's the framework. When do I find that in the Internal Revenue Code or regulations or something that that's the way it works? That, that's not in the briefing as far as either party. Right, that's why I'm asking the question. Yeah, that's not in the briefing. The closest, the most analogous situation that I sort of found, and I think it's in the briefing, is the 1099-C form, the discharge and whether or not that would be considered waiving the, the ability to collect on a loan. I think that's the most analogous case I could find, and I think our situation is stronger here. But see, I thought, I thought part of your argument was, all right, they come in and they raise an affirmative defense. They're really saying, you treat it as income with the W-2, so you're kind of stopped from now turning around and saying it wasn't income. And as I understand your counter argument is, your counter argument is, well, we were just doing it the way the Internal Revenue Code requires us to do it. That'd be a pretty good counter argument if the Internal Revenue Code requires you to do it. Hence, I thought I'd find in your brief some explanation as to why the Internal Revenue Code requires it, and that's what I don't see. So, I, I, in, inside the briefing, what I required, what I, what I included in there was the requirement that reporters' wages, whatever you got. Now, I guess the question here is whether or not this would be considered as wages or, or, or a loan. I think that's sort of the framework. Now, we're trying to figure out what, what provision of the code you're relying on when you say that you had to, you were compelled to report it as income. The requirement, and I don't have the tax regulation in front of me, but I can get it, is there a tax regulation that I have to report the wages that were given to the employee every year in the W-2s? So, that's the framework, and I see a question coming from you. So, sure, we could, even if the district court did not explain, did not address the issue we're talking about now, I mean, we can theoretically, we can affirm on any basis that's available in the record, but what I'm hearing is the record is really incomplete. We don't even have, we don't even know what all of the applicable regulations are that would allow us to answer this. It seems that we should, we should be sending this back to the district court to deal with this issue in the first instance. I don't think, well, we need to spend more time with it collectively, I understand that, but just hearing this argument, I don't think we have a record that would allow us to affirm on the basis, on this other basis in the record, even though the district court never dealt with it. So, I think before you right now, I think you do have, you do have before you a breach of contract claim that is, I'm not sure it's disputed in terms of what the contract said and what was done in terms of the performance. Well, they say it's disputed because you treated it not as a loan but as income. I, I, I, is the question whether or not it was waived? We waived our ability to collect it? I just wanted to make sure I answered your question. I'm responding to the dispute. You classify the disputes as strictly a breach of contract. I'm saying they say that you treated it not as a loan but as wages and therefore it's no longer a loan. I don't know if that's mutually exclusive with what I'm trying to say, explain in terms of there still being a breach of contract, there were contractual terms and they were not met. Whether it's classified as income or a loan or things, I think that's a separate issue and that speaks to what needs to be paid back and when more in terms of the damages analysis, how much. I'm not sure that speaks to whether or not it was breached or not. So, that would be my response to your, Judge Thompson. Was the payment here in one year, made in one year? The, the payment to whom, whether it's the school, are you talking about on its deputies? The, the fronting of the tuition payments. Because there is an IRS regulation that your co-counsel, your opposing counsels refer to, Ms. Deho, that you do have to report anything that goes over 5250 as remuneration. He, he being Mr. Bahada, entered school in 2016 and then he graduated in 2017. My assumption with that would be that someone was paid in 2016 and someone was paid in 2017 based upon the fact that his, his school year overlapped for two years, two separate, two separate tax years. And I have one question. This was a summary judgment decision. Yes, it was, Your Honor. Was there any question raised as to whether the court should address this whole issue of the loan given that we have diversity jurisdiction here? In terms of maybe perhaps remanding that issue back to the state court? Is that what the question? There was none on that point in terms of discussion before the court. There's any more questions about the tax issue or the loan issue? Because if not, I didn't know if we're going to actually discuss the discrimination claim as well. You know, to the extent that needs to be discussed, I think it's all been in brief so far. You know, we gave him two, two promotions. He was there for two and a half years. We gave him two promotions. He got a better job. He resigned with a significant length of time between his resignation letter and his actual departure. So that undermines his constructive discharge claim. And also, his resignation letter basically thanked us for having him here and all of his support. Is there any more questions, Your Honor? Yes, I have one question. The case law talks about that for constructive discharge to be found that the conditions of employment have to be rather severe. What I was trying to figure out when I was reading the material is whether you can at the same time have a severe employment environment, but find a professional way to nevertheless leave such that your career isn't harmed.  I really didn't understand the question, Your Honor. In other words, you're saying that because he remained in place, because he wrote how wonderful the job was, is that evidence that the conditions were not so severe? Or is there a case law that says you can try to professionally leave a bad situation? I'm not aware of any case law that speaks to in terms of leaving in a professional manner where you do these type of things to sort of maintain your presence in the community. I think what he did in terms of the resignation letter and the time he gave off undermined the fact that it was severe enough where he was required to leave. And in terms of evidence in the record that speaks to the discrimination claim, I think that there's only one statement by a coworker who told him that another coworker said he was hired because he was a minority. But I think that's the only thing in the record that actually supports his sort of discrimination claim. Thank you. Thank you. Any questions? Thank you. Thank you, Mr. Mack. Mr. Mack, I think you dropped something. I think that's yours. At this time, Attorney Dio, please come back to the podium and introduce yourself on the record. Again, you have a two-minute rebuttal. Attorney Sonya Dio for the appellant. Your Honor, I just want to touch on a thing that my brother just stated, which is that there was a judgment entered by the district court for $33,000, which was the total amount of the amounts paid by the employer to Bryant University on behalf of Mr. Mota. Whether you treat that as a loan or as income, in this instance, there was certainly no offset or any sort of attempt within the judgment to deal with any of these particular issues. So the offset, if this were done in sort of a solemn way, the offset, we would take the $33,000, we would subtract from it the income tax that he paid based on that increase in the W-2, then everybody would be left where the written agreement said they should be left. That would be one way to do it. But it's $33,000, not $3,300. By $33,000, right. We don't know on the record, though, how much additional income tax he paid as a result of the report to the IRS that it was income. Correct. That's true. I don't have that exact number there. It is something that could easily be attained. Which in fact, that could easily be done below. Easily done. Counselor, the income attributed to him for any the amount of the loan that was paid for that given year. I mean, that's so... What Bryan College received in the given year was not the $33,000. It was some portion of it. Or did he do all this in one year? Was all the money paid at once? No. Let me explain. Sure. In the record, there's three separate documents. The first year, 2016, I believe it's just short of $4,500 that was paid by the employer to Bryant University. The rest of the money... May I continue? Yes. The rest of the money was paid the following year. There's no indication, and this is not in the record, that any amount was imputed to him as income for 2016 with respect to these loans. And I'll provide you with the regulation, as we discussed earlier, that will illustrate how it is that when an employer pays these amounts, there's a certain amount they can pay per year on behalf of the employee. Where that employee has no obligation to pay that employer back, that is not income to the employee, but obviously deductible by the employer. I will provide that to you. And so just taking the $4,500 paid the first year, that would have been tax deductible to the employer? Yes, and it would not have been income imputed to Mr. Moda. But a benefit for the employer? Yes, it's a benefit for both, really. But yes, it is. It would come off the employer's top line as any benefit or wage. So notwithstanding your other claims before the court, is the issue of the loan simply a matter of incorrect computation? Does it come down to that? I believe we made two arguments below, and we made two arguments before you here. One argument is that under the IRS tax regs, this was really income and never really a loan. So that's one argument we make, and we cite a number of cases on that. The second argument we make is that by making this income, it's no longer a loan. Those are the two arguments that we make. And that applies to the $2,800,500 paid in 2017, not to the $4,500 paid in... Well, they didn't make any payment. That's why this is so confusing. There was no payment. If I may, I'm over, and I know that. Did they give him a W-2 for 2016 tax year? Yes, but it did not include any imputed income from amounts it paid on his behalf. Okay. So the only W-2 at issue is the 2017 W-2, which was enhanced by roughly $28,000 to $29,000. $22,705. Now, in the fact record before the court too, is also that they seized my client's last paycheck that also went towards those loan amounts. Is there any other questions? We're going to have to figure it out. That concludes argument in this case.